# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68613-5-I |
| | ) | consolidated with |
| Respondent, | ) | No. 68614-3-I |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID D. OGDEN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: September 23, 2013 |
| | ) | |

VERELLEN, J. — David Ogden appeals his convictions on charges of first degree robbery, attempted first degree robbery, and attempted second degree robbery. First, Ogden contends that the trial court erred by precluding him from introducing evidence necessary to rebut the prosecution theory that he had a financial motivation for the offenses. Because Ogden's trial counsel made no offer of proof as to the matter he intended to prove, this issue was not preserved for appellate review. Second, Ogden asserts, and the State concedes, that his sentence contains errors. We affirm the convictions, but remand for resentencing to correct the miscalculated offender score, incorrect community custody term, and sentence in excess of the statutory maximum.

## FACTS

The State charged Ogden with first degree robbery for an October 9, 2010 incident in which he robbed a Seattle bank of $250,[1] attempted first degree robbery for an incident later that day in which he demanded money from a teller at a different Seattle bank, but left without taking money,[2] and attempted second degree robbery for an October 12, 2010 incident in which he attempted to rob a Seattle restaurant by telling a cashier he had a gun, but fled before obtaining money.[3] At trial, the State presented the testimony of the bank tellers and restaurant employees who observed the incidents, and the police officers and detectives who investigated the offenses. The jury was also shown extensive physical evidence that Ogden committed the offenses, including his clothing seen in video from the bank robberies which was later found by police in his apartment.

Ogden's defense to each incident was diminished capacity due to a combination of pharmacological and psychological factors. He presented the expert testimony of Dr. Anthony Eusanio, who diagnosed him with posttraumatic stress disorder and other medical disorders. Dr. Eusanio opined that a combination of medications prescribed to Ogden may have interacted and, in combination with his medical and psychological

---

[1] This incident was recorded to video by the bank's video system; a copy of the video was played to the jury.

[2] This incident was also recorded and the recording was played for the jury.

[3] Ogden was pursued and apprehended by an employee of the restaurant, then taken into custody by police officers.

conditions, caused a "delirium."[4] Defense expert Dr. Robert Julien, who specialized in pharmacology, also testified that Ogden had been prescribed medications that could have caused drug-induced dementia or amnesia. Dr. Julien opined that Ogden was likely in a state of diminished capacity when he committed the offenses, but noted that his opinion depended on unknown factors, including which medications Ogden had actually taken.

To address the diminished capacity defense, the State presented the testimony of psychologist Dr. Ray Hendrickson and neuropsychologist Dr. Brett Parmenter. Dr. Hendrickson testified that Ogden was likely not in a substance-induced delirium at the time of the offenses based on his clinical observations of Ogden and review of the video recordings and witness accounts of the incidents. Dr. Parmenter testified that Ogden was likely exaggerating his symptoms based on his forensic mental health evaluation of Ogden.

The jury convicted Ogden as charged. The trial court imposed standard range sentences for each count.

Ogden appeals.

## ANALYSIS

### Dr. Julien's Testimony

Ogden contends that the trial court denied his right to present a defense by excluding evidence needed to rebut the State's theory that his indigency was the motive

---

[4] Report of Proceedings (RP) (Dec. 15, 2011) at 418. Dr. Eusanio also testified that Ogden scored in "the top one percent" on a scale indicating likely malingering or exaggerating his symptoms. Id. at 463.

for the offenses. Specifically, he contends that the trial court erred by excluding evidence that he was eligible for disability benefits. But the record demonstrates that Ogden's statement of the issue does not accurately describe the nature of the testimony offered at trial. Moreover, the record reveals that he failed to preserve the issue for appellate review by making an adequate offer of proof to the trial court.

Ogden's argument relies on a single trial court ruling sustaining the prosecutor's objection to testimony Ogden sought to elicit from pharmacology expert Dr. Julien. On redirect examination, Ogden's counsel asked Dr. Julien whether, based upon the medical records, "Mr. Ogden [is] disabled."[5] The prosecutor objected, arguing that the testimony was beyond the scope of the State's cross-examination. In response, Ogden's counsel argued that the evidence concerned only a potential source of income to Ogden, based on his indigency: "Your Honor the question was, based upon the doctor's review of the medical records, whether or not Mr. Ogden was disabled. *It goes to the question of source of income,* to the indigency issue raised by the State.[6] The trial court sustained the objection. Ogden made no further argument.

Ogden poses the issue as a violation of his state and federal constitutional rights to present a defense and due process protections,[7] as well as his right under the rules

---

[5] RP (Dec. 19, 2011) at 628.

[6] Id. (emphasis added).

[7] The Sixth and Fourteenth Amendment of the United States Constitution and article I, section 22 of the Washington Constitution guarantee an accused the right to defend against the State's allegations. This right is also recognized as a fundamental element of state and federal due process protections. Chambers v. Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed.2d 297 (1973); State v. Burri, 87 Wn.2d 175, 181, 550 P.2d 507 (1976).

of evidence to present relevant evidence.[8] These constitutional rights have limitations, however, including the requirement that the evidence sought to be admitted must be relevant.[9] But Ogden failed to persuasively present any basis for a determination that the evidence of whether or not Dr. Julien considered him disabled was relevant to the question of his indigency or to establish that he received income as a result of any disability.

Although Ogden argued that Dr. Julien's testimony that he was "disabled" was relevant to the question of whether he had a "source of income,"[10] he failed to make an adequate, timely offer of proof, as ER 103(a)(2) requires.[11] When error is predicated on a ruling that excludes evidence, it is the duty of a party offering evidence "to make clear to the trial court what it is that he offers in proof, *and the reason why he deems the offer admissible* over the objections of his opponent, so that the court may make an informed ruling."[12]

---

[8] Ogden cites ER 401, which provides that evidence is relevant if it makes "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[9] State v. Hudlow, 99 Wn.2d 1, 14-15, 659 P.2d 514 (1983); State v. Gallegos, 65 Wn. App. 230, 236-37, 828 P.2d 37 (1992).

[10] RP (Dec. 19, 2011) at 628.

[11] State v. Ray, 116 Wn.2d 531, 538, 806 P.2d 1260 (1991) ("An offer of proof serves three purposes: it informs the court of the legal theory under which the offered evidence is admissible; it informs the judge of the specific nature of the offered evidence so that the court can assess its admissibility; and it creates a record adequate for review.").

[12] Id. at 539 (emphasis added).

Although an offer of proof is not required "if the substance of the excluded evidence is apparent from the record,"[13] here, the substance of the testimony is not apparent. Unlike Ray, here there was no "extended colloquy" between the trial court and counsel, that "revealed the substance of the evidence . . . and the theory under which it was offered."[14] Ogden's counsel did not explain why Dr. Julien's potential testimony that Ogden was either disabled or not was relevant to the issue of his indigency, or how Dr. Julien could make such a determination "based upon the doctor's review of the medical records."[15] Even assuming that Dr. Julien could opine that Ogden was disabled, it was never explained to the trial court if, or how, Dr. Julien would know whether Ogden received income due to his disability.[16]

This issue was not adequately preserved for review.

*Sentencing*

Ogden identifies three errors relevant to his sentence. The State concedes the errors occurred. The record demonstrates that the State's concessions are well taken.

First, Ogden's offender score included a prior Colorado burglary conviction. Under the Sentencing Reform Act of 1981, chapter 9.94A RCW, a foreign conviction is included in a defendant's offender score if it is comparable to a Washington felony.[17]

---

[13] Id.

[14] Id.

[15] RP (Dec. 19, 2011) at 628.

[16] Ogden also did not explain that the "indigency issue" he referenced in argument concerned the State's theory of a financial motive.

[17] RCW 9.94A.030(11), .525(3); State v. Ford, 137 Wn.2d 472, 479, 973 P.2d 452 (1999).

Because no comparability analysis occurred, the conviction was erroneously included in Ogden's criminal history.

Second, Ogden's 36-month term of community custody on the first degree robbery conviction was based on the classification of his first degree robbery as a "serious violent offense." First degree robbery is a violent offense," but not a "serious violent offense."[18] The term of community custody imposed was in excess of that allowed by statute.[19]

Third, the 18-month term of community custody imposed on the attempted second degree robbery conviction was based on the classification of attempted second degree robbery as a "violent offense." Attempted second degree robbery is not a "violent offense."[20] On remand, the community custody term must be stricken.

The sentence for attempted first degree robbery,[21] 128 months of confinement and 18 months of community custody, was in excess of the statutory maximum 120 months.[22] On remand, the sentence must not exceed 120 months.

---

[18] Compare RCW 9.94A.030(45), with RCW 9.94A.030(54).

[19] RCW 9.94A.701(2).

[20] State v. Becker, 59 Wn. App. 848, 851-55, 801 P.2d 1015 (1990).

[21] RCW 9.94A.701(9). Attempted first degree robbery is a class B felony. RCW 9A.28.020(3)(b). The standard range sentence for attempted first degree robbery is 96.75 to 128.25 months. RCW 9.94A.510; RCW 9.94A.515 (first degree robbery has a seriousness level of IX);RCW 9.94A.533(2) (standard range for criminal attempt is 75 percent of the standard range).

[22] RCW 9A.20.021(1)(b).

*Statement of Additional Grounds for Review*

Finally, Ogden submitted a statement of additional grounds for review.[23]

However, he does not present any reasoned argument or analysis to identify any

specific claim of error. This statement is inadequate to inform us of the nature and

occurrence of alleged errors and is, accordingly, unreviewable under RAP 10.10(c).[24]

We affirm the convictions and remand to correct the sentence.

WE CONCUR:

---

[23] The statement of additional grounds consists of a chart with three columns headed "prosecutor misconduct," "ineffective [counsel]," and "judge misconduct," page citations to the verbatim report of proceedings in each column, and a list of authorities.

[24] While a defendant is not required to cite to the record or authority in a pro se statement of additional grounds, he must still inform the court of the nature and occurrence of alleged errors. State v. Thompson, 169 Wn. App. 436, 493, 290 P.3d 996 (2012).